**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VINCENT CARTER,

       Petitioner,                     Case No. 04-CV-74564-DT
                                                      Honorable Denise Page Hood

v.

HUGH WOLFENBERGER,

       Respondent.
_____/

**OPINION AND ORDER GRANTING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Vincent Carter ("Petitioner"), a state inmate currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of the following: (1) felony murder, MICH.COMP.LAWS 750.316, (2) armed robbery, MICH.COMP.LAWS 750.529, and (3) possession of a firearm during the commission of a felony, MICH.COMP.LAWS 750.227b. For the reasons stated below, the Court conditionally grants Petitioner's application for writ of habeas corpus.

**I.  Substantive Facts**

This case arises out of the homicide of Hani Naemi.[1] On March 20, 1992, Nidhal Jarbo and her brother-in-law, Hani Naemi, were working at their family store, the Eight Mile Express,

---

[1]This Court will only discuss the facts relevant to the resolution of the claim on which Petitioner is being granted habeas relief.

in Detroit, Michigan.  Petitioner was a regular customer of the store.  On that particular day, he came into the store, talked to Mr. Naemi, and then left.  As Ms. Jarbo left the store to go to the bank, she saw Petitioner standing outside the store with what appeared to be a gym bag.  When she returned to the store about fifteen or twenty minutes later, the police were present; Mr. Naemi had been shot.  Once inside the store, Ms. Jarbo noticed that the money tray was missing as was the money from the safe; a total of about four thousand dollars in cash was missing from the store.  The store safe was open when she left to go to the bank.  Ms. Jarbo told the police that she had seen Petitioner standing outside the store.  She knew Petitioner's girlfriend's name, as they both belonged to the store's video club.  Ms. Jarbo located the video club card with Petitioner's name and address on it and gave it to the police.

The police discovered that Petitioner was on parole at the time of the incident, that he was the last person Ms. Jarbo saw at the store before she went to the bank, and thus Petitioner became a suspect.  Petitioner was taken into custody and questioned.  However, because there was insufficient evidence to charge him with the crime, he was released.  Shortly thereafter, Petitioner was imprisoned on an unrelated parole violation–his parole was revoked based upon his arrest as a suspect in the Naemi murder, despite the charges being dismissed.  He was sent to the Muskegon Correctional Facility.

While imprisoned in the Muskegon Correctional Facility, Petitioner shared a cell with Norman Mackin ("Mackin").  It is alleged that Mackin, in an effort to obtain an early release, claimed that he was assaulted by several prisoners while housed with Petitioner in the same room.  Mackin testified at trial that Petitioner divulged to him his role in an unsolved Detroit murder.  Shortly afterwards, Mackin was roughed up by other prisoners.

Despite the statements made by Mackin to the police, Petitioner was granted parole from prison and remained free for approximately three years before he was arrested and charged in the instant case. It was the details provided by Mackin that eventually allowed the police to allegedly tie Petitioner to the murder of Mr. Naemi.

Trial in this case began on September 9, 1996. At trial, the prosecution presented eighteen witnesses, photographs and a diagram of the location of the store, as well as a technician's report.

Jury deliberations began on September 11, 1996. About fifteen minutes after the jury began to deliberate, the trial court received a note requesting the testimony of Officer Collins, Lieutenants Rice and Presley, and Norman Mackin. Officer Collins, Lieutenants Rice and Presley, and Norman Mackin were the key witnesses in the case. The trial court's response to the attorneys was as follows:

> Now, obviously what I will do when they come back is I will sit them down in the jury box and respond, as to Dale Collins' testimony, Mackin's testimony, Presley's testimony and Rice's testimony, as I indicated in the beginning, they are to rely on their collective memories, there's no testimony they can read from.

(Trial Tr. 649, Sept. 11, 1996). Neither the prosecution nor defense counsel had an objection to what the trial court was going to tell the jury.

It is undisputed that there were no eyewitnesses presented by the prosecution specifically identifying Petitioner as the perpetrator of the crime. The only evidence which remotely linked Petitioner to this crime was the testimony of Mackin, whose criminal history spanned over forty years and who claimed that Petitioner had confessed the crime to him. In exchange for his testimony, Mackin sought numerous favors, from State Police officials, the Wayne County

Sheriff Department, and the Wayne County Prosecutor's Office, ranging from immediate release from prison, special good-time reduction from his sentence, placement in the federal prison system, granting of a new trial for the conviction he was serving, and early parole. Mackin died in or about June 2000.

## II.  Procedural History

On September 9, 1996, Petitioner was tried before a jury in Detroit Recorder's Court, the Honorable Karen M. Fort Hood, presiding. On October 3, 1996, he was sentenced to non-parolable life imprisonment for the felony murder conviction, twenty to forty years' imprisonment for the armed robbery conviction, which was vacated, and two years' imprisonment for the felony firearm conviction.

Petitioner appealed his convictions to the Michigan Court of Appeals raising three issues: (1) ineffective assistance of counsel; (2) insufficient evidence; and (3) abuse of discretion by the trial court in denying the jury's request for testimonial transcripts of four key trial witnesses.

While his appeal was pending, on May 16, 1997, Petitioner filed a *pro per* motion for a new trial and/or evidentiary hearing with the trial court on the basis of ineffective assistance of trial counsel. After holding an evidentiary hearing on that motion, the trial court found that Petitioner's claim was without merit and denied the motion. *People v. Carter*, No. 96-002619 (Detroit Recorder's Court, May 30, 1997).

Meanwhile, Petitioner filed with the Michigan Court of Appeals a motion to remand for the purpose of filing a motion for a new trial on the basis of newly discovered evidence. On June 29, 1998, the Court of Appeals denied that motion.

On December 18, 1998, the Michigan Court of Appeals, in a unanimous decision, reversed and remanded Petitioner's convictions to the trial court for a new trial. The Court of Appeals did not find that Petitioner's due process rights were violated because he was denied the effective assistance of counsel or that there was insufficient evidence to sustain his convictions. Rather, it found that the trial court abused its discretion, in violation of M.C.R. 6.414(H), in denying the jury's request for testimonial transcripts of four key trial witnesses, specifically that of Norman Mackin, the inmate who resided with Petitioner while he was being held at the Muskegon Correctional Facility as a result of a parole violation. It stated:

> The jury requested the testimony of Mackin, the person to whom defendant was alleged to have confessed his crime, and police officers Collins, Presley, and Rice. Defendant's primary strategy at trial was to impeach the credibility of Mackin and argue that he received his information about the crime from sources other than defendant. Both Rice and Collins were questioned regarding whether information about the crime was communicated to other agencies. Presley was the first police officer to learn that Mackin had information regarding the case, after which time he flew to the Upper Peninsula to speak with Mackin and obtain a statement. Defendant's comments to Mackin constituted the only direct evidence against defendant.
>
> Of the eighteen witnesses who testified, the jury requested the testimony of the witness who provided the only direct evidence against defendant, the witnesses who testified regarding whether Mackin could have received the information elsewhere, and the police officer who first met with Mackin to take his statement shortly after he learned that Mackin possessed relevant information. Therefore, the testimony of three of the police officers was relevant to defendant's main defense–that Mackin received the information elsewhere, while Mackin's and Presley's testimony supported the prosecutions' case. In fact, Mackin's testimony was the only direct evidence of defendant's guilt. The jury's request for the testimony of the witnesses who provided direct testimony in support or contravention of the prosecution's and defendant's respective theories indicates the possibility that their deliberations regarding defendant's guilt may well have been

5

affected had the testimony been presented for their review.

*People v. Carter*, No. 199979, slip op. at 2 (Mich.Ct.App. Dec. 18, 1998) (per curiam).

The People then filed an application for leave to appeal to the Michigan Supreme Court, which reversed the Court of Appeals decision and reinstated Petitioner's convictions. It held in pertinent part:

> We conclude that, although the trial court violated the court rule by foreclosing to the jury the possibility of later reviewing the requested testimony, this error does not warrant reversal of defendant's convictions because defense counsel specifically approved the trial court's refusal of the request and its subsequent instruction to the jury. Defendant's waiver of his rights under the rule has extinguished any error.

*People v. Carter*, 462 Mich. 206, 219; 612 NW2d 144 (2000) (Cavanagh, J. and Kelly, J., dissenting). A motion for rehearing was filed and denied.

Petitioner next filed a motion for relief from judgment in the trial court. That motion was denied on May 21, 2002. Petitioner filed an application for leave to appeal from that order to both the Michigan Court of Appeals and the Michigan Supreme Court. Both courts denied Petitioner's applications for leave to appeal. *People v. Carter*, No. 248630 (Mich.App. Sept. 4, 2003); *People v. Carter*, 470 Mich. 855, 679 N.W.2d 73 (2004). On November 16, 2004, Petitioner filed the pending petition for a writ of habeas corpus asserting that his constitutional rights were violated. Petitioner states the following:

> I. The trial court violated a court rule when it denied the jury's request during deliberations for the re-reading of the testimonies of four witnesses whose testimonies were crucial at trial.
>
> II. The trial court erred in finding that the newly discovered evidence of an eyewitness who saw a man come out of the

>
> store where the deceased was killed would likely not have changed the outcome of the case where there was no other direct eyewitness testimony to the crime.
>
> III. The trial court erred in finding that Petitioner did not submit a properly verified affidavit of the eyewitness and failed to hold an evidentiary hearing to assess that testimony.
>
> IV. The trial court erred in finding that the newly discovered evidence of perjured testimony by the primary witness against defendant did not justify a new trial where the testimony related to his motive and bias.
>
> V. The trial court erred in finding that the documents that defendant cited in support of his claim that his trial counsel perjured himself at an evidentiary hearing were not newly discovered evidence.
>
> VI. The trial court erred in finding that Petitioner had not established his claim for ineffective assistance of counsel.
>
> VII. The trial court erred in not granting defendant relief from judgment based on the cumulative effect of the newly discovered evidence.

On April 27, Petitioner filed an amendment to his petition, adding the following claim:

> VIII. Petitioner was denied his constitutional right to due process, where the trial court lacked jurisdiction to entertain the prosecutor's information specifically charging the elevated maximum penalty of first degree murder contrary to *U.S. v. Booker* and *Blakely v. Washington*.

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions.  Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

7

>granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, *supra* at 407-08. Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, *supra* at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable

application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, *supra* at 412.

### IV.  Analysis

#### A.  Law Regarding Ineffective Assistance of Counsel Claim

Petitioner contends that he is entitled to habeas relief because trial counsel was ineffective. Specifically, Petitioner argues that counsel was constitutionally deficient for failing to object to the trial court's refusal to allow the jury to review vital testimony in violation of M.C.R. 6.414(H). Respondent contends that this claim lacks merit. This Court notes that Petitioner raised his ineffective assistance of counsel claims in both the Michigan Court of Appeals and the Michigan Supreme Court, and in his state post-conviction motion in the state courts. The Michigan Supreme Court failed to specifically address or discuss the merits of Petitioner's ineffective assistance of counsel claims. When a state court of last resort fails to address the merits of a properly raised ineffective of counsel issue, a federal habeas court conducts its review of the Petitioner's claim *de novo*. *See Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (relying on *Wiggins v. Smith*, 539 U.S. 510 (2003).

To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

With respect to the performance prong of the *Strickland* test, a petitioner must identify

9

acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, *supra* at 686.

### B. Law Regarding Waiver and Plain Error

The Michigan Supreme Court in deciding this case, although finding that the trial court did in fact violate M.C.R. 6.414(H), did not reach the merits of Petitioner's ineffective assistance of counsel claim because it found that, despite the trial court's error, because defense counsel did not object to the trial court's refusal of the jury's request, Petitioner's rights were waived. The Michigan Supreme Court denied Petitioner relief on his claim, finding that:

> Although the trial court violated the court rule by foreclosing to
> the jury the possibility of later reviewing the requested testimony,
> we
> hold that this error does not warrant reversal of defendant's
> convictions because defense counsel specifically approved the trial
> court's refusal of the jury's request and the court's subsequent
> instruction to the jury. Thus, defendant waived his rights under the
> rule. This waiver extinguishes any error and precludes defendant

from raising the issue on appeal.

*Carter*, 462 Mich. at 208-09.

The Michigan Supreme Court relied on *United States v. Olano*, 507 U.S. 725, 732-33 (1993), which stands for the proposition that Petitioner waived the trial court's error when his defense counsel expressed satisfaction with the trial court's refusal of the jury's request and its subsequent instruction to the jury.   However, the Michigan Supreme Court's decision is contrary to the principles stated in *Olano*, the federal case on which it relies.

The *Olano* decision articulated the following principle - deviation from a legal rule is "error" unless the rule has been waived.  507 U.S. at 732-33.  Specifically, the *Olano* Court stated:

> Waiver is different from forfeiture.  Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake. * * * If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an "error" within the meaning of [] despite the absence of a timely objection.

*Id.* at 733 (citations omitted).  The *Olano* Court held that where an error affects the substantial rights of the defendant, it is considered plain error, despite the fact that the so-called error was not brought to the attention of the court.  *Id.* at 731-732 (citing *United States v. Young*, 470 U.S. 1, 15 (1985)).

In *Olano*, the trial court erroneously allowed two alternate jurors to attend, but not participate in, deliberations along with the regular jurors.  *Id.* at 727.  That violated the Federal

Rule of Criminal Procedure 24(c) as quoted in *Olano*. *Id.* at 730. The United States Supreme Court described the case as involving a deviation from, and violation of a "rule" rather than a violation of a "right." *Id.* at 737. The case was then analyzed under waiver principles. "Waiver" was defined as the "intentional relinquishment . . . of a known *right*." *Id.* at 733.

The Michigan Supreme Court found that Petitioner did not have "a right to have a jury rehear testimony." *Carter*, 462 Mich. at 218. Such phrasing of the right at issue necessarily led that court to its conclusion. However, in *Olano*, the Court did not analyze whether the defendants had a "right to have only twelve jurors in the room during deliberation." Rather, the *Olano* Court seemed to imply that a violation of the court rules is a violation of general due process rights protected by the rules.

Consistent with *Olano*, the trial court in the present case violated M.C.R. 6.414, which directs that the trial court may "not refuse a reasonable request" and states that the trial court may not foreclose later review of the testimony. The *Olano* Court explained that a court must first determine whether the right waived is waivable. *Id.* at 733. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Id.*

Here, M.C.R. 6.414(H) is the result of a judgment by the Michigan Supreme Court that the "true administration of justice" calls for the trial court to allow the jury to have testimony read back to resolve disagreement or correct a memory failure. *People v. Howe*, 392 Mich. 670, 221 N.W.2d 350 (1974). An informed and accurate debate in the jury room is fundamental to our system of justice. A jury should not be denied a reasonable opportunity to review critical

testimony.

In this case, it is of major concern that we have no knowledge of the extent of the jury's confusion. It is possible that jurors, who did not remember the testimony of key witnesses, may have allowed themselves to be persuaded by those who nevertheless claimed to remember. That scenario is even more probable when the jurors were advised by the trial court that they could not review the requested testimony. Because the truth-seeking function of the jury was tainted by the trial court's violation of the court rule in this case, and pursuant to the law as outlined in *Olano*, the error was not waivable.

Next, under *Olano*, Petitioner must show plain error. In defining plain error, the Court explained that the error must be clear under current law. *Olano*, *supra* at 734. As discussed above, the trial court's instruction violated the clear current law as stated in M.C.R. 6.414(H).

*Olano* then goes on to say that a defendant must show that the plain error affected substantial rights. *Id.* at 734. Here, the trial court's refusal to allow the jury to review the testimony of key witnesses was a violation of Petitioner's right to have the jury base its verdict on a clear understanding of the facts. Petitioner was convicted on the basis of Mackin's testimony. Otherwise, there was only evidence that he was in the vicinity of the store. In this close case, the jury had a legitimate interest in reviewing the testimony of the key witnesses. This is the sort of error that compromises the fairness, integrity, and truth-seeking function of a jury trial. Thus, the Michigan Supreme Court's finding of waiver was erroneous, and, in turn, violated Petitioner's due process rights.

### C. Analysis of Ineffective Assistance of Counsel Claim

### 1. Trial counsel's failure to object to the trial court's failure to re-read the requested trial transcripts was unreasonable–the Michigan Court of Appeals found there was a court rule that required the testimony to be re-read.

Petitioner asserts that the "failure to quarrel with the trial judge's determination not to allow the rehearing of testimony" should have been raised at his initial *Ginther* hearing. Therefore, Petitioner argues, he was denied his constitutional right to effective assistance of counsel. He also implies that his appellate attorney was ineffective in failing to raise that issue and in failing to effectively cross-examine trial counsel at the *Ginther* hearing.

In its decision in this case, the Michigan Supreme Court held that the crucial factor in deciding the case was defense counsel's acquiescence to the court rule violation. Thus, had defense counsel objected, thus preserving the error, under the Michigan Supreme Court's analysis of the case, Petitioner would be granted a new trial. Given the devastating result of defense counsel's acquiescence under that analysis, Petitioner is able to demonstrate prejudice, since there was a reasonable probability that the result of the trial would have been different if the trial judge had permitted the jury to review the transcripts of the key witnesses. Thus, Petitioner was denied his Sixth Amendment right to effective assistance of counsel. *See Strickland*, *supra*.

Petitioner has therefore satisfied his burden under the two-prong test of *Strickland*: (1) defense counsel's performance was deficient and (2) that deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland*, *supra* at 687. Here, the jury requested testimony of only the key witnesses. The prosecutor's case relied heavily on Mackin's testimony. Had it not been for that testimony, Petitioner would never have been

arrested and charged. Petitioner was questioned on the basis of the circumstantial evidence, but because the police did not have enough evidence to hold him, he was not charged until Mackin came forward. The jury requested only the testimony of those who could support Petitioner's theory that Mackin lied. Denial of that request violated the court rule, and thus, pursuant to *Olano*, *supra*, affected Petitioner's due process rights. Petitioner was prejudiced by defense counsel's deficient performance at trial. Petitioner is entitled to habeas relief on this claim.

## V.  Conclusion

For the reasons stated above, this Court concludes that Petitioner is entitled to federal habeas relief on the claim of ineffective assistance of counsel.

Because the Court has concluded that Petitioner is entitled to habeas relief on the ineffective assistance of counsel claim, the Court considers it unnecessary to review Petitioner's other claims and declines to do so. *See Haynes v. Burke*, 115 F. Supp.2d 813, 819-20 (E.D.Mich. 2000); *Berrier v. Egeler*, 428 F. Supp. 750, 754 (E.D.Mich. 1976).

### VI.  Order

**IT IS HEREBY ORDERED:**

That Petitioner's Application for Writ of Habeas Corpus is conditionally granted.  Unless the State takes action to afford Petitioner a new trial within ninety (90) days of the date of this Order, he may apply for a writ ordering Respondent to release him from custody forthwith.

                                    s/ DENISE PAGE HOOD  
                                    DENISE PAGE HOOD  
                                    UNITED STATES DISTRICT JUDGE

DATED: November 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 27, 2006, by electronic and/or ordinary mail.

                                    s/ William F. Lewis  
                                    Case Manager